| | |
|---|---|
| TERILYNN NICHOLSON, as the Next of Kin and Representative of the Beneficiaries of Tory Hardy, Deceased,<br><br>    *Plaintiff,*<br>v.<br><br>CITY OF CHATTANOOGA, TENNESSEE, a Tennessee Municipal Corporation; HAMILTON COUNTY, TENNESSEE; JOHN DOE CITY OF CHATTANOOGA POLICE OFFICER, individually and in his official capacity; and JOHN DOE HAMILTON COUNTY SHERIFF'S DEPARTMENT OFFICER, individually and in his official capacity,<br><br>    *Defendants.* | )<br>)<br>)<br>)<br>)<br>)    No. 1:04-cv-168<br>)    *Edgar*<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM

Plaintiff Terilynn Nicholson, as the next of kin and representative of Tory Hardy, brings this civil rights action against the City of Chattanooga, Tennessee ("City of Chattanooga"), Hamilton County, Tennessee ("Hamilton County"), John Doe City of Chattanooga Police Officer, individually and in his official capacity, and John Doe Hamilton County Sheriff's Department Officer, individually and in his official capacity. Ms. Nicholson brings claims for violation of Tory Hardy's Fourth, Fifth, and Fourteenth Amendment rights under the U.S. Constitution pursuant to 42 U.S.C. § 1983 ("Section 1983"). Ms. Nicholson seeks compensatory, punitive damages, and loss of consortium damages.

Defendants City of Chattanooga and John Doe City of Chattanooga Police Officer move for summary judgment dismissal of all of plaintiff's claims against them. [Court Doc. No. 23-1]. Defendants Hamilton County Sheriff's Department and John Doe Hamilton County Sheriff's Department Officer also move for summary judgment dismissal. [Court Doc. No. 25]. Ms.

Nicholson opposes the motion. [Court Doc. No. 31]. After reviewing the record the Court finds that defendants' motions for summary judgment are well taken and will be **GRANTED**.

I.      **Background**

The facts, seen in the light most favorable to the plaintiff, are as follows. On June 9, 2003 several thousand people were attending an annual festival in Chattanooga known as the Bessie Smith Strut (the "Strut"). As was the tradition, the Strut took place primarily on Martin Luther King Boulevard in downtown Chattanooga. Around 10:30 p.m. City of Chattanooga police officers received orders to form a line to clear Martin Luther King Boulevard. following the end of the Strut. [Court Doc. No. 23-4, Affidavit of Lieutenant Charles B. Russell ("Russell Aff."), ¶ 2]. The police officers were dressed in riot gear with helmets and shields, and a large crowd of young people began charging the line of police officers. *Id.* at ¶¶ 3-4.

Lieutenant Russell, an officer on the scene at the time, indicates that the officers "heard a series of rapid, what sounded like shots being fired just South of us at approximately 10:45 p.m." Russell Aff., ¶ 5. A newspaper report of the event states that a Chattanooga Police Department spokesman indicated that shootings occurred "about 10:15 p.m. at 10th and Foster streets." [Court Doc. No. 18]. The scene became somewhat chaotic at this time, and the record indicates that a riot may have commenced sometime near or before the time of the shootings. Russell Aff., ¶ 7; [Court Doc. No. 18]. Around 10:47 p.m. a SWAT officer informed Lieutenant Charles Russell that someone had been shot at Foster Street. Russell Aff., ¶ 9. Lieutenant Russell moved as quickly as he could to the scene of the incident, although he did stop to ask people who were lying down in the street if they were injured. *Id.*

When Lieutenant Russell reached the scene, he observed a young man, whom he later learned was Tory Hardy, lying on his back with blood all over his upper torso and in his mouth. Russell Aff., ¶ 10. Mr. Hardy appeared to be having difficulty breathing. *Id.* Lieutenant Russell

or other officers "immediately called for an ambulance" when they arrived on the scene, and Lieutenant Russell asked that the emergency medical team be informed that the situation was a very serious medical emergency. *Id.* at ¶¶ 10-11. Lieutenant Russell then established a crime scene around the area. *Id.* at ¶ 12. Lieutenant Russell estimates that an ambulance arrived at the scene within four to five minutes after his arrival at the scene. *Id.* at ¶ 13. Incident report sheets relating to the shooting indicate that police arrived on the scene at 10:47 p.m., a call for an ambulance occurred at 10:47 p.m., and a medical unit arrived on the scene between 10:51 and 10:55 p.m. [Court Doc. No. 21-2; Court Doc. No. 21-2, Affidavit of Lt. Michael Glenn ("Glenn Aff."), ¶ 5]. The incident reports also indicate that one victim was dead on the scene at 10:48 p.m. [Court Doc. No. 21-2]. A medical assessment chart relating to the incident indicates that a John Doe patient at the scene was asystole without any cardiac rhythm and had zero pulse, respiration and blood pressure at 10:56 p.m. *Id.* This patient was later identified as Tory Hardy. Glenn Aff., ¶ 7. The incident reports establish that Mr. Hardy reached Erlanger Hospital by 11:01 p.m. *Id.* at ¶ 6.

The City of Chattanooga provides its police officers with training regarding requesting medical attention for injured persons at crime scenes. [Court Doc. No. 23-2, Affidavit of Lon Eilders ("Eilders Aff."), ¶ 2]. The Chattanooga Police Department's policy relating to crime scenes states that "[t]he officer shall administer first aid and/or summon emergency medical assistance if required, and take those steps necessary to protect victims or others." *Id.* at Ex. 1.

**II.      Standard of Review**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete*

*Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140 (6th Cir. 1997). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

**III.     Analysis**

    **A.     *Section 1983 Claim***

4

Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim pursuant to Section 1983, a plaintiff must demonstrate two elements: "(1) the defendants deprived [plaintiff] of a right, privilege, or immunity secured to [him] by the United States Constitution or other federal law; and (2) the defendants caused the deprivation while acting under color of state law." *Cunningham v. Sisk*, 2003 WL 23471541, *5 (E.D. Tenn. 2003) (citing *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000)). Only the first prong of the test is relevant in this action because the defendants do not dispute that they were acting under color of state law in responding to the shooting of Tory Hardy.

Section 1983 " 'creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.' " *Alexander v. Haymon*, 254 F.Supp.2d 820, 830 (S.D. Ohio 2003) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000)). Ms. Nicholson alleges that the defendants violated Mr. Hardy's Fourth, Fifth, and Fourteenth Amendment rights under the U.S. Constitution. U.S. Const. amend. IV; U.S. Const. amend. V; U.S. Const. amend. XIV.

### 1. **Municipal Defendants and John Does in their Official Capacities**

The U.S. Supreme Court has held that municipalities are included as persons within the meaning of Section 1983, and therefore plaintiffs may sue municipalities for relief under the statute. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A suit against an individual in his official capacity is "only another way of pleading an action against an entity of which the officer is an agent." *Id. See also St. John v. Hickey*, 411 F.3d 762, 775 (6th Cir. 2005).

A municipality may not be held liable under Section 1983 under a theory of respondeat superior. *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 691). Municipalities are only liable under Section 1983 if they have an established policy or custom that causes the alleged injury. *See Monell*, 436 U.S. at 690.

> A municipality may be held liable only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.' Furthermore, for municipal liability, there must be an 'affirmative link between the policy and the particular constitutional violation alleged.' The claimant has the burden of proof for establishing the existence of an unconstitutional policy and demonstrating the link between the policy and the alleged injuries at issue.

*Bennett*, 410 F.3d at 818-19 (quotations and citations omitted). Plaintiffs must prove that their particular injuries were "incurred because of the execution of the policy or custom." *Cunningham*, 2003 WL 23471541 at *14 (citing *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405 (1997); *Gregory*, 220 F.3d at 442; *Doe v. Claiborne County, Tennessee*, 103 F.3d 495 (6th Cir. 1996); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

This Court has noted that a custom must " 'be so permanent and well settled as to constitute a custom or usage with the force of law.' " *Cunningham*, 2003 WL 23471541 at *14 (quoting *Monell*, 436 U.S. at 691). A plaintiff may establish a policy or custom in several ways. There may be an official policy that defendants promulgated. *Id.* A plaintiff may also show a "pervasive custom or practice of which the [ ] lawmakers either know or reasonably should know." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). Such a custom must be "so widespread and commonly accepted as to in effect have the force of law." *Cunningham*, 2003 WL 23471541 at *14 (citing *Brown*, 520 U.S. at 404; *Monell*, 436 U.S. at 690-91). A plaintiff can also establish the requisite policy or custom for purposes of Section 1983 by demonstrating that an official with policymaking authority has taken a single act relating to the

6

subject matter or area at issue. *Cunningham*, 2003 WL 23471541 at *14 (citing *City of St. Louis v. Paprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Pembauer v. City of Cinncinnati*, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

Ms. Nicholson presents no evidence of any policy or custom, either official or unofficial, on the part of the City of Chattanooga or Hamilton County relating to the alleged violation of Mr. Hardy's constitutional rights. It is her burden to produce evidence of a policy, an injury, and a link between the policy and the injury. *See Bennett*, 410 F.3d at 818-19. Ms. Nicholson fails to establish evidence of the requisite policy. Conclusory allegations in an unverified complaint will not suffice to create a genuine issue of material fact on summary judgment. Fed. R. Civ. P. 56(e); *see also, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Ms. Nicholson could also demonstrate liability under Section 1983 against the City of Chattanooga and Hamilton County by showing that they failed properly to train and supervise their employees. *Cunningham*, 2003 WL 23471541 at *15. Liability under this theory will exist only if plaintiffs "can prove that the [governmental agencies'] failure to train evidences deliberate indifference to the rights of its inhabitants such that the failure to train in effect constitutes a governmental custom or policy within the *Monell* framework." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

In the instant action Ms. Nicholson demonstrates no evidence of a failure to train or supervise by the City of Chattanooga or Hamilton County. Because Ms. Nicholson fails to introduce evidence creating a genuine issue of material fact regarding an unlawful policy or a failure to train by defendant City of Chattanooga or Hamilton County, this Court will **DISMISS** her Section 1983 claims against the City of Chattanooga, Hamilton County, and the John Doe defendants in their official capacities.

### 2. John Doe Defendants in their Individual Capacities

7

The City of Chattanooga and Hamilton County argue on behalf of the John Doe defendants that the doctrine of qualified immunity applies and shields the John Doe defendants from liability for any alleged constitutional violations in this case. The doctrine of qualified immunity "shields 'government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The U.S. Supreme Court has established a two-part test for determining whether a law enforcement officer is entitled to qualified immunity. *See Lyons v. City of Xenia*, 417 F.3d 565 (6th Cir. 2005) (citing *Brosseau v. Haugen*, __ U.S. __, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)). Under this test district courts must:

> consider whether 'the facts alleged show the officer's conduct violated a constitutional right.' . . . If the plaintiff can establish that a constitutional violation occurred, a court should ask 'whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition.

*Lyons*, 417 F.3d at 571 (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

Once the defendants claim the affirmative defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendants are not entitled to the defense of qualified immunity. *Myers v. Potter*, __ F.3d __, 2005 WL 2138543, *4 (6th Cir. 2005) (citing *Gardenhire*, 205 F.3d at 311). When a defendant moves for summary judgment and asserts the defense of qualified immunity, the plaintiff must "1) identify a clearly established right alleged to have been violated; and 2) establish that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right." *Pray v. City of Sandusky*, 49

8

F.3d 1154, 1159 (6th Cir. 1995) (citing *Johnson v. Estate of Laccheo*, 935 F.2d 109, 111 (6th Cir. 1991)).

The threshold issue to analyze is whether defendants violated a constitutional right. *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 589 (6th Cir. 1994). Plaintiff alleges in her complaint that the John Doe defendants refused to allow emergency medical personnel to provide medical treatment to Mr. Hardy for over 45 minutes after the defendants' arrival at the scene. [Court Doc. No. 1]. She contends that this alleged action violated Mr. Hardy's Fourth, Fifth and Fourteenth Amendment rights.

The Fourth Amendment to the United States Constitution provides that:

> [t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Since Mr. Hardy was not subject to either a search or a seizure, the Court concludes that Ms. Nicholson fails to demonstrate that the John Doe defendants violated his Fourth Amendment rights against unreasonable searches and seizures.

Ms. Nicholson also brings a claim for violation of Tory Hardy's "due process rights to be free from arbitrary deprivations of life, liberty, and property." [Court File No. 1]. The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV; *see also DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 194-95, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). The Fifth Amendment to the U.S. Constitution also contains a Due Process Clause that is a counterpart to the Due Process Clause of the Fourteenth Amendment. *DeShaney*, 489 U.S. at 197; *Schroder v. City of Fort Thomas*, 412 F.3d 724, 727 (6th Cir. 2005). However, as the Supreme Court has noted, "nothing in the language of the Due Process Clause itself requires the State to protect the

9

life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney*, 489 U.S. at 195. Thus, "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196.

The Sixth Circuit recognizes two exceptions to the general rule expressed by the Supreme Court in *DeShaney*:

> Under the first exception, 'when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.' . . . Under the second exception, where a State creates a more perilous situation that renders citizens more vulnerable to danger at the hands of private actors, a plaintiff may bring a substantive due process claim by establishing (1) an affirmative act by the State that either created or increased the risk that the plaintiff would be exposed to private acts of violence; (2) a special danger to the plaintiff created by state action, as distinguished from a risk that affects the public at large; and (3) 'the requisite [state] culpability to establish a substantive due process violation.'

*Schroder*, 412 F.3d at 727-28 (quotations and citations omitted).

The first exception, known as the "custodial" exception, applies in situations in which the State has custody over an individual, such as a prisoner or an involuntarily committed patient. *See Schroder*, 412 F.3d at 728. Plaintiff appears to argue that this exception applies by citing cases involving pretrial detainees and prisoners in custody. *See Gray v. City of Detroit*, 399 F.3d 612 (6th Cir. 2005); *Watkins v. City of Battle Creek*, 273 F.3d 682 (6th Cir. 2001); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Court concludes that this exception is inapplicable in the instant action because Ms. Nicholson does not allege that the defendants took Tory Hardy into their custody.

However, even if the custodial exception applied in the instant action, Ms. Nicholson fails to create a genuine issue of material fact that the defendants acted with deliberate indifference

10

towards Mr. Hardy's serious medical needs. Ms. Nicholson bears the burden to do so. *See Watkins*, 273 F.3d at 686. As the Sixth Circuit noted in *Watkins*:

> Deliberate indifference is not mere negligence. Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm . . . This standard is subjective. It is not enough that there was a danger of which an officer should objectively have been aware. '[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'

*Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Ms. Nicholson argues that the defendants demonstrated deliberate indifference by failing to obtain or provide medical assistance for Mr. Hardy for forty-five minutes. She relies on a newspaper article that states that the shooting occurred "about 10:15 p.m." for support of her theory. [Court Doc. No. 18]. She alleges that emergency medical workers were not allowed to enter the area until forty-five minutes after the shooting. [Court Doc. No. 31]. The newspaper article, citing a police department spokesman, constitutes "classic inadmissible hearsay", and is thus not properly considered on summary judgment. *See Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005); *Packer v. City of Toledo*, 178 F.3d 1295, 1999 WL 196540 *3 (6th Cir. 1999).

Ms. Nicholson also relies upon an unidentified and unauthenticated document purporting to be an internet "web blog" written by one of the emergency medical professionals sent to the scene of the shooting. [Court Doc. No. 18]. This document does not shed light on precisely when the shooting occurred. The writer states that by 10:20 p.m. the line of police officers had not yet reached his position. *Id.* At that time a commotion started. A riot erupted, and a stampede of people came running towards him. *Id.* Then the medical professional indicates that he had to deal with two other patients, one in his ambulance and one at a location across the street. Sometime after 10:20 p.m. the writer dealt with a commotion, a riot, a stampede, a patient in his ambulance, and one across the street. Only after all of these events did the medical professional hear information that

11

shots had been fired. *Id.* The alleged medical professional "never heard the shots." *Id.* The blog indicates that the medical professional did not believe that Tory Hardy had a chance of survival when he observed his injuries at the scene. *Id.* In addition, all of the other evidence in the record indicates that the shooting occurred around 10:47 and that police and emergency medical professionals were on the scene within minutes. [Court Doc. Nos. 21-2, 23-4].

Further, nothing in the record demonstrates that the defendants acted with deliberate indifference to Mr. Hardy's medical needs. In fact, the record demonstrates the opposite. Police incident activity reports indicate that the police called for an ambulance almost immediately upon their arrival at the scene. [Court Doc. No. 21-2]. Lieutenant Russell indicates that he had his team call an ambulance immediately and tried to "establish the fact that we had a very serious call here so we would get top priority." Russell Aff., ¶ 11. Lieutenant Russell asserts that he "attempted to expedite medical personnel" and "did not observe anyone prevent medical personnel from reaching the crime scene." *Id.* at ¶ 15. Although Lieutenant Russell was trained in CPR, he was not trained in providing emergency medical care. *Id.* at ¶ 16. He refrained from personally providing Mr. Hardy with medical services because he believed that he might "do more harm than good" by providing CPR to a gunshot victim. *Id.* The evidence also indicates that Mr. Hardy may have been dead when the police arrived on the scene or that he had very little chance of survival. Russell Aff., ¶¶ 10-11, 13; [Court Doc. Nos. 18; 21-2]. The record thus does not demonstrate that the defendants were deliberately indifferent to Mr. Hardy's serious medical needs.

The Court also concludes that Ms. Nicholson fails to satisfy any of the requirements of the "state-created danger" exception to the *DeShaney* rule. Ms. Nicholson fails to demonstrate that the defendants took any affirmative act that created or increased the risk that Mr. Hardy would be exposed to private danger. The parties do not dispute that private actors shot Mr. Hardy in a random shooting event at a citywide festival that had devolved into chaos. Nothing in the record

12

demonstrates that the defendants acted affirmatively to encourage or create a situation that would cause Mr. Hardy to be more likely to be a victim of an act of random violence than any other member of the public.

With respect to the second prong of the "state-created danger" exception, Ms. Nicholson argues that the defendants' actions created a special danger to Mr. Hardy because by securing the scene, they prevented medical personnel from reaching Mr. Hardy in a timely manner. For the reasons stated *supra* the Court concludes that Ms. Nicholson has failed to create a genuine issue of material fact regarding whether the defendants responded timely to Mr. Hardy's medical needs. Thus, Ms. Nicholson fails to create a genuine issue of fact regarding the second prong of the "state-created danger" exception to the *DeShaney* rule.

Even if Ms. Nicholson could demonstrate one of the first two prongs of the "state-created danger" exception, she fails to demonstrate the third prong of the exception. The culpabilty prong requires State action so "egregious" that it is "arbitrary in the constitutional sense" and "shocks the conscience." *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002) (quoting *City of Sacremento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). When actual deliberation is practical, the standard to be applied is "deliberate indifference," which is similar to "subjective recklessness." *Bukowski v. City of Akron*, 326 F.3d 702, 710 (6th Cir. 2003); *Ewolski*, 287 F.3d at 510. In situations in which deliberation is impractical, such as high speed chases, "a Fourteenth Amendment violation occurs only when the police act with malice and an 'intent to harm.'" *Ewolski*, 287 F.3d at 511 (quoting *Lewis*, 523 U.S. at 854).

In the instant action, the Court finds that due to the volatile nature of the situation involving a festival, a riot, a stampede, random gunfire, and multiple shooting victims, the defendants' deliberation was impractical. Thus, Ms. Nicholson must demonstrate that the defendants acted with malice and the intent to harm. As noted *supra*, nothing in the record demonstrates that the

defendants acted with deliberate indifference towards Mr. Hardy's medical needs. Nor does the record demonstrate that the defendants acted maliciously and intended to harm Mr. Hardy. The record indicates that the police called for an ambulance almost immediately upon their arrival at the scene and tried to expedite medical aid. [Court Doc. No. 21-2]; Russell Aff., ¶¶ 11, 15. Based on a review of the record, the Court concludes that Ms. Nicholson fails to create a genuine issue of material fact regarding the defendants' requisite culpability to establish a "state-created danger" exception to the *DeShaney* rule.

Because Ms. Nicholson fails to demonstrate that a constitutional violation of any kind occurred, the individual John Doe defendants are entitled to qualified immunity based on their alleged actions. This Court will **DISMISS** plaintiff's Section 1983 claims against the John Doe defendants in their individual capacities.

### B.      *Failure to Comply with Federal Rules of Civil Procedure 4(m) and 15(c)*

The Court concludes that another reason for dismissing the John Doe defendants exists. The events giving rise to this action occurred on June 9, 2003. Plaintiffs filed their complaint on June 8, 2004 against the City of Chattanooga, Hamilton County, and two John Doe police officers. The City of Chattanooga moves to dismiss the John Doe defendants based on a failure to comply with service requirements under Federal Rules of Civil Procedure 4(m) and 15(c). Ms. Nicholson does not respond to the City of Chattanooga's arguments pertaining to dismissal of the John Doe defendants, nor does she assert any good cause for having failed to serve such defendants or having failed to move to amend her complaint to identify the defendants.

Tenn. Code Ann. § 28-3-105 provides a one-year statute of limitations for actions arising under federal civil rights statutes and actions for "injuries to the person." Tenn. Code Ann. § 28-3-104(a)(1)-(3); *see also Berndt v. State of Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986); *King v. Emery*, 871 F.2d 1088, 1989 WL 27992 *1 (6th Cir. 1989).

14

Federal Rule of Civil Procedure 4(m) provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Federal Rule of Civil Procedure 15(c) provides:

> An amendment of a pleading relates back to the date of the original pleading when
> (1) relation back is permitted by the law that provides the statute of limitation applicable to the action, or
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by Amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against a party.

Fed. R. Civ. P. 15(c).

Federal courts have discussed a plaintiff's obligation to identify and serve John Doe defendants within the context of Federal Rules of Civil Procedure 4(m) and 15(c). The Sixth Circuit has held that:

> new parties may not be added after the statute of limitations has run, and [ ] such amendments do not satisfy the 'mistaken identity' requirement of Rule 15(c)(3)(B). . . . The naming of 'unknown police officers' in the original complaint does not save the pleading. Substituting a named defendant for a 'John Doe' defendant is considered a change of parties. Therefore, the requirements of Fed. R. Civ. P. 15(c) must be met in order for the amendment adding the named defendant to relate back to the filing of the original complaint.

15

*Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (citing *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449-50 (6th Cir. 1991); *Marlowe v. Fisher Body*, 489 F.2d 1057, 1064 (6th Cir. 1973)); *see also Dye v. City of Warren*, 367 F.Supp.2d 1175, 1182 (N.D. Ohio 2005).

Federal Rule of Civil Procedure 15(c)(3) also incorporates the requirements of Federal Rule of Civil Procedure 4(m). As the Sixth Circuit has noted:

> Rule 4 requires a plaintiff to perfect service on a defendant within 120 days of filing a complaint naming that defendant. A plaintiff cannot extend the service period with respect to an already-named defendant by filing an amended complaint naming additional defendants. In the absence of a showing of good cause, failure to timely serve a defendant mandates dismissal. The plaintiff bears the burden of showing good cause for failure to timely serve.

*Harris v. City of Cleveland*, 7 Fed. Appx. 452, 456 (6th Cir. 2001) (citations omitted). *See also Doughty v. City of Vermillion*, 118 F.Supp.2d 819, 821 n.1 (N.D. Ohio 1999).

In the instant action more than two years have lapsed since the events giving rise to this lawsuit. Ms. Nicholson filed her complaint within the one-year statute of limitations for federal civil rights actions and personal injury actions. Tenn. Code Ann. § 28-3-104. The complaint names two John Doe officers as defendants. [Court Doc. No. 1].

Ms. Nicholson has not moved to amend her complaint to identify the John Doe defendants. Nor does Ms. Nicholson allege that she served either of the John Doe defendants with service of process within 120 days of her filing of the complaint. Further, Ms. Nicholson demonstrates no good cause for her failure to seek the identity of the Doe defendants. In addition, this Court cannot enter a judgment against an unidentified person. *See e.g.*, *Ferrif v. City of Hot Springs, Ark.*, 82 F.3d 229, 231 n.1 (8th Cir. 1996); *Sepulveda v. City of New York*, 2003 WL 21673626 *6 (S.D.N.Y. 2003). Because Ms. Nicholson has failed to move to amend her complaint in accordance with Federal Rule of Civil Procedure 15(c), has failed to identify the John Doe defendants within the appropriate statute of limitations, and has failed to serve the John Doe defendants in accordance with

Federal Rule of Civil Procedure 4(m), the Court will **DISMISS** the John Doe defendants from this action.

## IV. Conclusion

After reviewing the record and the applicable law, the Court concludes that no genuine issue of material fact exists regarding plaintiff's claims against the defendants, and these claims will be **DISMISSED WITH PREJUDICE**. Defendants' motions for summary judgment will be **GRANTED**.

A separate judgment will enter.

                                                */s/ R. Allan Edgar*
                                                  R. ALLAN EDGAR
                                     UNITED STATES DISTRICT JUDGE